UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Isaiah Owens, | Civil Action Case No.: 2:25-cv-00622 |
| Plaintiff, | |
| -against- | **COMPLAINT** |
| Select Portfolio Servicing, Inc., | |
| Defendant. | |

Plaintiff Isaiah Owens (the "Plaintiff"), by and through his attorneys, Petroff Amshen LLP, as and for his complaint against Select Portfolio Servicing, Inc., hereby alleges the following upon personal knowledge, review of public record, and/or otherwise upon information and belief:

1.      Plaintiff brings this action for damages arising under the Real Estate Settlement Procedures Act ("RESPA") and its implementing Regulation X (12 U.S.C. § 2601, *et seq.* and 12 C.F.R. § 1024.1, *et seq.*), Truth In Lending Act ("TILA") and its implementing Regulation Z (15 U.S.C. § 1601, *et seq.* and 12 C.F.R. § 1026.1, *et seq.*), Fair Debt Collection Practices Act ("FDCPA") and its implementing Regulation F (15 U.S.C § 1692, *et seq.* and 12 C.F.R § 1006.1, *et seq.*), and N.Y. Banking Law and accompanying regulations, resulting from Select Portfolio Servicing Inc.'s failure to fully or properly respond to Plaintiff's qualified written request for information related to his mortgage loan account, failure to disclose finance charges and other fees added to Plaintiff's mortgage loan balance, charging of improper and duplicative fees, artificially inflating Plaintiff's loan balance to illegally collect additional fees and interest on the inflated amount, and other practices prohibited by federal and state consumer protection laws.

## PARTIES

2.     Plaintiff is an individual and resident of the State of New York, County of Nassau.

3.     Defendant Select Portfolio Servicing, Inc. ("SPS") is a corporation incorporated under the laws of the State of Utah, with its headquarters at 3217 S Decker Lake Drive, Salt Lake City, Utah 84119. Upon information and belief, SPS is the current servicer and has serviced the subject mortgage loan since June 1, 2013.

## JURISDICTION

4.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331, as Plaintiff's claims substantially arise under federal law.

5.     Venue in this district is proper pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events giving rise to Plaintiff's claims occurred in this district, and the mortgaged property underlying Plaintiff's claims is situated in this district.

## STATEMENT OF FACTS

### I.     MORTGAGE LOAN AND MODIFICATION

6.     Plaintiff is the owner of real property located at 14 Ocean Avenue, Valley Stream, New York 11580 (the "Property"). Plaintiff purchased the Property on May 22, 2006.

7.     Plaintiff has maintained the Property as his mailing address for service of notices under the subject mortgage loan documents since its origination.

8.     Plaintiff is the obligor on a note securing repayment of a loan for $352,000.00, dated May 22, 2006, and executed in favor of WMC Mortgage Corporation. Repayment of the note is secured by a mortgage, which was recorded as a lien against the Property (the "Mortgage"). A true and correct copy of the note is annexed as **Exhibit 1**. A true and correct copy of the Mortgage is annexed as **Exhibit 2**.

3

9.      On April 1, 2018, Plaintiff executed a Loan Modification Agreement with SPS (the "Modification"), which increased the unpaid principal balance of the loan from $352,000.00 to $663,554.70, "including unpaid and deferred interest, fees, escrow advances and other costs." A true and correct copy of the Modification is annexed as **Exhibit 3**.

10.     No new funds were advanced or disbursed to Plaintiff. *See* Ex. 3.

11.     The Modification capitalized $311,554.70 of accrued fees, interest, and other expenses into the loan's principal balance, nearly doubling the original amount of the loan.

12.     Upon information and belief, the Modification was procured by deceptive and fraudulent practices constituting improper, inadequate, or nonexistent due diligence regarding Plaintiff's ability to repay the owed amounts.

13.     As evidence, the Modification also includes a final balloon payment on the "interest bearing principal balance" of $355,475.46 due on the maturity date, which is more than the original amount of the loan. *See* Ex. 3.

14.     The Modification, which significantly increased the unpaid principal balance, qualifies as a new obligation and new transaction requiring new consumer disclosures under TILA-Part B and Regulation Z. *See* 12 C.F.R. §1026.20 (a).

15.     Congress enacted TILA "to safeguard the consumer in connection with the utilization of credit by requiring full disclosure of the terms and conditions of finance charges in credit transactions or in offers to extend credit." 90 P.L. 321, 82 Stat. 146. TILA requires lenders and servicers to disclose key details about loans, such as the annual percentage rate (APR), finance charges, the amount financed, and the total number of payments.

16.     Regulation Z (12 C.F.R. § 1026.1, *et seq.*), issued by the Bureau of Consumer Financial Protection ("CFPB"), is TILA's implementing regulation. TILA expressly authorizes the

CFPB to prescribe rules and regulations it deems necessary or proper to effect its purposes. *See* 15 U.S.C. § 1604(i). Its purpose is to ensure that the disclosures required by TILA are provided in a clear, conspicuous, and timely manner, thereby helping consumers make informed credit decisions. Regulation Z also sets forth rules for specific practices related to consumer credit, including mortgage lending, credit card disclosures, and advertising. It provides guidelines for how and when lenders must disclose information, as well as what constitutes compliant and non-compliant behavior in the offering of credit.

17.     Upon information and belief, when Plaintiff executed the Modification, he was not provided with the disclosures required under section 12 C.F.R. §1026.20 of Regulation Z.

18.     Regulation X further mandates early intervention requirements to inform delinquent borrowers about loss mitigation options. Servicers are required to make good faith efforts to establish live contact with delinquent borrowers and provide written notice containing specific loss mitigation information. *See* 12 C.F.R. § 1024.39.

19.     SPS, in violation of 12 C.F.R. § 1024.39(a), failed to timely provide the required information to Plaintiff, substantially delaying Plaintiff's ability to pursue loss mitigation or a much more favorable loan modification.

## II.    LOAN AND SERVICING TRANSFERS

20.     Public records reflect a written assignment dated March 5, 2010, purporting to transfer the Mortgage to US Bank National Association, as trustee for J.P. Morgan Mortgage Acquisition Trust 2006-WMC3, Asset Backed Pass Through Certificates, Series 2006-WMC3. A true and correct copy of the assignment is annexed as **Exhibit 4**.

21.    Upon information and belief, J.P. Morgan Chase Bank, National Association serviced the Mortgage loan from inception until on or about June 1, 2013, when servicing was transferred to SPS.

22.    SPS is the current servicer of Plaintiff's Mortgage loan.

23.    Accordingly, on May 7, 2024, on Plaintiff's behalf, Plaintiff's attorneys mailed a Qualified Written Request ("QWR") to SPS, seeking information regarding the Mortgage loan account, including an itemization and explanation of all fees and other amounts charged to Plaintiff's account and/or added to the loan balance since origination. A true and correct copy of the QWR is annexed hereto as **Exhibit 5**.

24.    By letter, SPS acknowledged receipt of Plaintiff's QWR. A true and correct copy of the QWR acknowledgment is annexed as **Exhibit 6**.

25.    Plaintiff's attorneys received a deficient QWR response from SPS dated May 29, 2024. A true and correct copy of the QWR response letter is annexed as **Exhibit 7**.

26.    In the QWR acknowledgement, SPS identified Plaintiff's address as 23 Ocean Avenue, Valley Stream, even though the address shown on the Mortgage indicates that Plaintiff's address is 14 Ocean Avenue, Valley Stream. *See* **Exhibit 2** and **Exhibit 6**.

27.    RESPA requires a servicer, within thirty (30) days of receipt of a QWR from a borrower or his agent, to (i) conduct an investigation, (ii) make any necessary corrections to the borrower's account and provide written notice of any such corrections, and (iii) provide a written explanation that includes the "information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer." *See* 12 U.S.C. § 2605(e)(2).

28.     Accordingly, SPS violated 12 U.S.C. § 2605(e)(2) by failing to conduct a proper investigation regarding Plaintiff's loan account.

29.     The Modification also identifies Plaintiff's Property with the incorrect address.

30.     Additionally, as pretext to providing incomplete information responsive to Plaintiff's QWR, the response stated, "the remaining documentation requests are overbroad and unduly burdensome and will not be fulfilled." *See* Ex. 6.

31.     RESPA prohibits loan servicers from failing to comply with CFPB regulations intended to carry out RESPA's consumer protection purposes, including Regulation X. *See* 12 U.S.C. § 2605(k)(1)(E).

32.     Regulation X also details specific actions a loan servicer must take upon receipt of a request for information, including acknowledging receipt, conducting a proper investigation, correcting any errors identified by the borrower or otherwise discovered during the investigation, and providing the borrower with a written response and explanation. *See* 12 C.F.R. § 1024.36.

33.     Pursuant to 12 U.S.C. § 2605(e), loan servicers have a duty to respond to inquiries received from a borrower or his agent, meeting the criteria of a QWR.

34.     Additionally, § 1024.35(b) of Regulation X lists eleven categories of "covered errors" under Regulation X including: (i) failure to properly accept and apply payments; (ii) failure to accurately credit payments on the date received; (iii) failure to timely pay taxes, insurance premiums, and other charges; (iv) imposing improper fees or charges; (v) failure to timely and accurately transfer servicing information to a transferee servicer; and (vi) "[a]ny other error relating to the servicing of a borrower's mortgage loan." *See* 12 C.F.R. § 1024.35(b).

35.     In response to Plaintiff's QWR, SPS provided inaccurate and contradictory information regarding Plaintiff's loan account. SPS' failure to disclose the entire information

requested in the QWR not only undermines Plaintiff's ability to understand his Mortgage, but also directly violates the statutory requirement to fully inform borrowers about their accounts. This failure constitutes a breach of RESPA's core purpose, which is to promote transparency and protect consumers from abusive practices in mortgage servicing.

36.    SPS' incomplete response violates the letter of the law and constitutes a breach of the duty of care owed to the Plaintiff.

37.    As a result of these actions in violation of 12 U.S.C. §§ 2605(e) and 2605(k), and 12 C.F.R. §§ 1024.35 and 1024.36, Plaintiff has suffered actual damages including but not limited to payment of attorneys' fees, loss and reduction of credit, damage to his credit rating, increased debt and financial burden resulting from improperly imposed fees, interest, and other charges, and emotional distress.

## III.    INADEQUATE ESCROW DISCLOSURES, CONFLICTING/MISSING INFORMATION, UNEXPLAINED FEES AND CHARGES, AND OTHER ACCOUNT ERRORS.

38.    RESPA and Regulation X require a servicer to make escrow payments for "taxes, insurance premiums, and other charges in a timely manner as such payments become due," and "before the deadline to avoid a penalty." *See* 12 U.S.C. § 2605(g); 12 C.F.R. §§ 1024.17(k), 1024.34(a).

39.    "For each escrow account, . . . [t]he servicer shall conduct an escrow account analysis upon establishing an escrow account and at completion of the escrow account computation year." *See* 12 C.F.R. § 1024.17(f)(1)(i).

40.    Plaintiff duly requested the following information from SPS:

6.    A copy of the escrow account analysis performed on the loan from inception to the date of this letter, and proof each escrow account analysis was sent to borrower.

7.    A copy of all escrow disbursements made by the servicer.

41. SPS, in violation of 12 U.S.C. § 2609(c)(2), only provided three annual escrow account disclosure statements, dated July 7, 2021, July 20, 2022, and July 25, 2023.

42. Plaintiff duly requested the following information from SPS:

> 8. A copy of all invoices and receipts of payments on all escrow disbursements by the servicer.

> 14. A complete and itemized statement of the escrow account for the loan from its inception to the date of this letter, including receipts of disbursements with respect to real estate property taxes, fire or hazard insurance, flood insurance, mortgage insurance, credit insurance, or any other insurance product associated with the loan.

43. SPS, in violation of 12 C.F.R. § 1024.17(i), failed to provide any escrow disbursement history for a period of seven (7) years, between the inception of the loan and 2013. *See* Ex. 7.

44. Plaintiff duly requested the following information from SPS:

> 12. A complete and itemized statement of the payment history from the inception of the loan to the date of this letter.

> 13. A complete and itemized statement of all advances or charges against the loan for any purpose not reflected on the loan history transaction statement.

45. SPS, in violation of 12 C.F.R. § 1024.36 and 12 U.S.C. § 2605(e), failed to provide a complete and itemized statement of the payment history from the loan's inception to the QWR.

46. SPS also failed to provide any of the requested supporting documentation for certain types of fees charged to the loan account, including inspection fees, property preservation fees, broker opinion fees, appraisal fees, and bankruptcy monitoring fees.

47. The limited loan and escrow transaction histories SPS did provide, contain conflicting and unexplained disclosures with missing information, the transaction dates do not match with the transaction due dates, and there is no explanation or breakdown whatsoever of any fees since 2009. *See* Ex 7.

48.　　Upon information and belief, many of these fees, advances, and other amounts added to the loan balance were excessive, illegal, and/or improper. The nature of these fees being capitalized into the modified loan balance was not fully or properly disclosed to Plaintiff or his attorneys in connection with the Modification.

49.　　Likewise, the transaction history SPS provided from J.P. Morgan Chase Bank, National Association, the previous servicer, shows multiple unexplained pre-distributed payments, conflicting fee adjustments and late charge assessments with no reference. A true and correct copy of J.P. Morgan Chase Bank, National Association's transaction history is annexed as **Exhibit 9**.

50.　　Despite Plaintiff's request in the QWR, SPS provided limited explanation or legend regarding the descriptions, transaction codes, and other abbreviations used in the various disjunctive loan/escrow histories and transaction summaries attached to the responses.

51.　　SPS did not provide statements of all advances and charges against the loan for purposes not reflected on the loan history transaction statement. SPS did not deliver a complete and itemized statement of property inspection fees, property preservation fees, broker opinion fees, appraisal fees, and bankruptcy monitoring fees from the inception of the loan to the date of the QWR. SPS is obligated to provide this by 15 U.S.C. § 1641(d)(1) and 12 C.F.R. § 1024.36.

52.　　Summaries of the fees and other charges added to Plaintiff's loan account, as reflected in the loan transaction histories provided with the QWR response, are attached as follows:

　　　a.　Fees and other lender paid expenses are annexed as **Addendum A**.

　　　b.　Property preservation fees are annexed as **Addendum B**.

　　　c.　Escrow disbursements are annexed as **Addendum C**.

　　　d.　Attorneys' fees and costs are annexed as **Addendum D**.

53.　　In total, between May 22, 2006 (date of origination) and May 14, 2024 (the date of the last loan transaction summary provided), Plaintiff's account was charged with at least:

      a.  $169,233.72 in ambiguous lender paid expenses;

      b.  $20,408.34 unexplained property preservation fees; and

      c.  $97,510.81 in escrow disbursements made during the default period.

      d.  $13,725.20 in attorney's fees.

54.    The property preservation fees contain substantial and repeated contradictions, reporting conflicting figures from multiple BPO disbursements taking place on the same day.

55.    Aside from missing seven years' worth of information on Plaintiff's account, the account history SPS provided is also missing critical information, including the following:

      a.  A calculation or itemization of interest charged to or accrued on the loan, or any indication of the running balance of interest accruing on the loan at any given time.

      b.  A calculation of the unpaid principal balance of the loan, including any increase or decrease in the balance resulting from credits, debits, interest accrual, and other transactions on the account.

      c.  A listing, breakdown, or explanation of any balances, fees, charges, or amounts carried over from prior servicers when the loan boarded with J.P. Morgan Chase Bank, National Association.

56.    SPS also made 31 corporate advance adjustments with no explanation, all dated June 14, 2013. *See* Add B.

57.    Upon information and belief, these fees and charges, including disbursements for city taxes and force-placed insurance made to protect SPS' interests in the Property, were capitalized into the principal loan balance on a rolling basis, allowing SPS to improperly collect additional interest on an artificially inflated principal.

58.    Specifically, although the Mortgage expressly provides for payment of escrow funds to the lender, and for the lender to hold and timely disburse the escrow funds as required by law, it appears SPS made multiple city tax and insurance disbursements at infrequent intervals during the default period.

59.     Notably, the contents of the Escrow Statements provided do not fully or accurately comply with the requirements of 12 C.F.R. § 1024.17(i)(1), as they are missing required information, and they all contain inaccurate and contradictory information for overlapping time periods in comparison to the loan transaction histories.

60.     The escrow disclosures all reflect projected shortages of several thousand dollars, consistently fluctuating Plaintiff's mortgage payment every year as a result.

61.     These, and other discrepancies summarized in Addendum A, B, C, and D or otherwise apparent on the face of the loan history, demonstrate that SPS has grossly mismanaged Plaintiff's account and intentionally misrepresented figures, calculations, and other related information, in order to manufacture an ongoing escrow deficiency and illegally collect additional fees, interest, and other amounts that they would not otherwise be entitled to collect.

62.     Accordingly, SPS' failure to properly administer and maintain Plaintiff's escrow account is a violation of 12 U.S.C. §§ 2605(g) and 2605(k), and 12 C.F.R. §§ 1024.17 and 1024.34, which entitles Plaintiff to recover actual damages pursuant to 12 U.S.C. § 2605(f)(1), along with any attorneys' fees and costs incurred, pursuant to 12 U.S.C. § 2605(f)(3).

**IV.     PATTERN AND PRACTICE OF NONCOMPLIANCE.**

63.     This is not the first time SPS has been sued for violating multiple federal consumer finance laws and causing harm to borrowers. In fact, SPS has been the subject of documented servicing violations and regulatory enforcement by government agencies including the CFPB and the Federal Trade Commission.

64.     SPS has been ordered to implement regulatory procedures, and to pay millions of dollars in penalties and consumer redress, for failing to comply with the requirements of various

consumer protection laws including RESPA and its implementing Regulation X, TILA and its implementing Regulation Z, and the Consumer Financial Protection Act of 2010.

65.    Upon information and belief, SPS violated consumer protection laws while servicing Plaintiff's Mortgage loan account by:

    a.  Charging improper, excessive, and/or duplicative fees, interest, service charges, and other amounts not permitted by the loan documents or applicable law;

    b.  Failing to conduct required escrow management functions including conducting accurate and timely escrow analyses, accurately and timely disbursing payments for property taxes and insurance, and maintaining complete and accurate escrow account data;

    c.  Failing to maintain and follow procedures reasonably designed to maintain accurate and complete loan data and documentation, and to facilitate the transfer of such information and documentation in connection with service transfers; and/or

    d.  Failing to provide required notices and disclosures required by the loan documents and applicable law.

66.    These violations have negatively impacted Plaintiff by causing, among other things, increased debt and financial burden, loss and reduction of credit, and damage to his credit rating.

67.    Accordingly, SPS' national presence as one of the largest mortgage loan servicers in the country, and its ongoing documented violations of federal consumer protection laws, demonstrates a pattern and practice of noncompliance, and reflects consumer-oriented conduct with a broader impact on consumers at large.

### VIOLATIONS OF RESPA AND REGULATION X
**(12 U.S.C. § 2601, *et seq.* and 12 C.F.R. § 1024.1, *et seq.*)**

68.    Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

69.    RESPA (12 U.S.C. § 2601, *et seq.*) is a federal consumer protection statute which, along with its implementing regulations, imposes certain duties on lenders and servicers related to the real estate settlement process and servicing of mortgage loans, and provides a framework for

borrowers to investigate and remedy servicing and account errors. RESPA's primary purpose is to prevent abusive practices and safeguard the interests of consumers, in what are often the most significant financial transactions of their lives.

70.    Regulation X (12 C.F.R. § 1024.1, *et seq.*) is RESPA's implementing regulation. RESPA expressly authorizes the CFPB "to prescribe such rules and regulations, to make such interpretations, and to grant such reasonable exemptions for classes of transactions, as may be necessary to achieve the purposes of this chapter." *See* 12 U.S.C. § 2617(a). It dictates the precise responsibilities of the mortgage servicer, particularly concerning borrower communications.

71.    RESPA prohibits loan servicers from failing to comply with CFPB regulations intended to carry out RESPA's consumer protection purposes, including Regulation X. *See* 12 U.S.C. § 2605(k)(1)(E).

72.    Plaintiff is a "person" as defined by RESPA. *See* 12 U.S.C. § 2602(5).

73.    SPS is the "servicer" of Plaintiff's loan, as defined by RESPA and Regulation X. *See* 12 U.S.C. § 2605(i)(2); 12 C.F.R. § 1024.2.

74.    Plaintiff entered a "federally related mortgage loan" as defined by RESPA. *See* 12 U.S.C. § 2602(1).

## COUNT I
### Failure to Accurately Respond to Borrower Inquiries
### (12 U.S.C. §§ 2605(e), 2605(f) and 12 C.F.R. §§ 1024.35, 1024.36)

75.    Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

76.    Pursuant to 12 U.S.C. § 2605(e), loan servicers have a duty to respond to inquiries received from a borrower or his agent, meeting the criteria of a QWR.

77.    A QWR is defined as "written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that (i) includes, or otherwise enables

the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B).

78.     RESPA requires a servicer, within thirty (30) days of receipt of a QWR from a borrower or his agent, to (i) conduct an investigation, (ii) make any necessary corrections to the borrower's account and provide written notice of any such corrections, and (iii) provide a written explanation that includes the "information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer." *See* 12 U.S.C. § 2605(e)(2).

79.     Regulation X also details specific actions a loan servicer must take upon receipt of a request for information, including acknowledging receipt, conducting an investigation, correcting any errors identified by the borrower or otherwise discovered during the investigation, and providing the borrower with a written response and explanation. *See* 12 C.F.R. §§ 1024.35, 1024.36.

80.     For purposes of Regulation X, "[a] qualified written request that requests information relating to the servicing of the mortgage loan is a request for information for purposes of this section, and a servicer must comply with all requirements applicable to a request for information with respect to such qualified written request." 12 C.F.R. § 1024.36(a).

81.     Section 1024.35(b) lists eleven categories of "covered errors" under Regulation X including: (i) failure to properly accept and apply payments; (ii) failure to accurately credit payments on the date received; (iii) failure to timely pay taxes, insurance premiums, and other charges; (iv) imposing improper fees or charges; (v) failure to timely and accurately transfer

servicing information to a transferee servicer; and (vi) "[a]ny other error relating to the servicing of a borrower's mortgage loan." *See* 12 C.F.R. § 1024.35(b).

82.    In response to Plaintiff's QWR, SPS provided inaccurate and contradictory information regarding Plaintiff's loan account. In this case, the servicer's failure to disclose the entire information requested in the QWR not only undermines the borrower's ability to understand their mortgage but also directly violates the statutory requirement to fully inform borrowers about their account. This failure constitutes a breach of RESPA's core purpose, which is to promote transparency and protect consumers from abusive practices in mortgage servicing.

83.    Further, the documents and account histories provided to Plaintiff demonstrate that SPS made copious servicing errors including, but not limited to, failure to properly and accurately apply payments, charging improper and duplicative fees to Plaintiff's account, collecting interest on an artificially inflated loan balance, failure to timely pay property taxes, and mishandling escrow account information.

84.    Notably, although Plaintiff requested a complete and itemized account history, SPS failed to provide account transaction records for extensive time periods during which J.P. Morgan Chase Bank, National Association serviced the loan.

85.    SPS also failed to provide the yearly escrow account statements for a period of seven (7) years between the inception of the loan and 2013.

86.    The limited documents and account histories SPS did provide reflect copious servicing errors by all entities involved in the servicing of Plaintiff's loan, including, but not limited to, failure to maintain complete and accurate servicing and account records, charging improper, duplicative, excessive, and unexplained fees to Plaintiff's account, mismanagement of escrow accounts, intentional miscalculation and misrepresentation of escrow figures, inaccurate

reporting of loan account information, and collecting interest on an artificially inflated loan balance.

87.     SPS failed to investigate, correct, or explain these errors when responding to Plaintiff's QWR, in violation of 12 C.F.R. §§ 1024.35 and 1024.36, and 12 U.S.C. §§ 2605(e) and 2605(k). By withholding or omitting important information, SPS impeded Plaintiff's ability to understand his Mortgage obligations, identify potential errors, and take necessary corrective actions. This lack of transparency led to further financial harm, such as unwarranted fees, incorrect interest calculations, and wrongful foreclosure actions.

88.     SPS' refusal to disclose Plaintiff's full account history, or to explain the extensive fees added to the loan balance, also indicates that SPS made additional, more egregious servicing errors and/or failed to transfer or obtain complete and accurate information regarding Plaintiff's account.

89.     As a result of these actions in violation of 12 U.S.C. §§ 2605(e) and 2605(k), and 12 C.F.R. §§ 1024.35 and 1024.36, Plaintiff has suffered actual damages, including, but not limited to, payment of attorneys' fees, loss and reduction of credit, damage to his credit rating, increased debt and financial burden resulting from improperly imposed fees, interest, and other charges, and emotional distress.

90.     Accordingly, under 12 U.S.C. § 2605(f), Plaintiff is entitled to seek legal remedies as SPS failed to comply with the QWR requirements. SPS' incomplete response violates the letter of the law and constitutes a breach of the duty of care owed to the Plaintiff.

91.     This lack of transparency and failure to disclose required account information deprives Plaintiff of the opportunity to exercise his rights effectively. Indeed, it has caused Plaintiff to suffer additional and continuing financial and other harm, including the ongoing accrual of

unwarranted fees, interest, and other charges, incurring legal fees and other expenses to address his account issues and defend wrongful foreclosure actions, and the potential loss of his home of nearly twenty years.

92.     Given that these servicing errors have persisted over the course of at least 11 years without correction, SPS has also demonstrated a pattern and practice of noncompliance with RESPA's statutory requirements and implementing regulations.

93.     Accordingly, Plaintiff is entitled to recover actual damages pursuant to 12 U.S.C. § 2605(f)(1), along with any attorneys' fees and costs incurred, pursuant to 12 U.S.C. § 2605(f)(3).

94.     Plaintiff is also entitled to additional statutory damages pursuant to 12 U.S.C. § 2605(f)(1)(B), because of SPS' pattern and practice of noncompliance.

95.     Finally, Plaintiff is entitled to a complete and accurate response to the original QWR. This includes disclosing all relevant information regarding the Plaintiff's mortgage account, correcting any errors, and ensuring full compliance with both RESPA and Regulation X.

## COUNT II
### Improper Administration of Escrow Accounts
### (12 U.S.C. § 2605(g) and 12 C.F.R. §§ 1024.17, 1024.34)

96.     Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

97.     RESPA and Regulation X require a servicer to make escrow payments for "taxes, insurance premiums, and other charges in a timely manner as such payments become due," and "before the deadline to avoid a penalty." *See* 12 U.S.C. § 2605(g); 12 C.F.R. §§ 1024.17(k), 1024.34(a).

98.     "For each escrow account, . . . [t]he servicer shall conduct an escrow account analysis upon establishing an escrow account and at completion of the escrow account computation year." *See* 12 C.F.R. § 1024.17(f)(1)(i).

99.     A servicer must provide the borrower with an annual escrow account statement "within 30 days of the completion of the escrow account computation year." *See* 12 C.F.R. § 1024.17(i). "The annual escrow account statement shall provide an account history, reflecting the activity in the escrow account during the escrow account computation year, and a projection of the activity in the account for the next year." *See* 12 C.F.R. § 1024.17(i)(1).

100.     The Escrow Statements provided do not fully or accurately comply with the requirements of 12 C.F.R. § 1024.17(i)(1), as they are missing required information, and contain inaccurate and contradictory information for overlapping time periods.

101.     The discrepancies summarized in Addendum C, or otherwise apparent on the face of the Escrow Statements, demonstrate that SPS has grossly mismanaged Plaintiff's escrow account and intentionally misrepresented figures, calculations, and other related information, in order to manufacture an ongoing escrow deficiency and illegally collect additional fees, interest, and other amounts that they would not otherwise be entitled to collect.

102.     SPS also failed to comply with the escrow administration requirements of RESPA and Regulation X, including failing to provide accurate and timely disclosure statements, and failing to make timely escrow disbursements on Plaintiff's behalf.

103.     SPS' failure to properly administer and maintain Plaintiff's escrow account is a violation of 12 U.S.C. §§ 2605(g) and 2605(k), and 12 C.F.R. §§ 1024.17 and 1024.34, entitling Plaintiff to recover actual damages pursuant to 12 U.S.C. § 2605(f)(1), along with any attorneys' fees and costs incurred, pursuant to 12 U.S.C. § 2605(f)(3).

104.     Because SPS has also demonstrated a pattern and practice of noncompliance with RESPA's statutory requirements and implementing regulations, for each such violation, Plaintiff is entitled to additional damages pursuant to 12 U.S.C. § 2605(f)(1)(B).

## COUNT III
### Violation of Servicer Prohibitions
### (12 U.S.C. § 2605(k) and 12 C.F.R. § 1024.38)

105.    Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

106.    RESPA and its implementing Regulation X, specific prohibitions are placed on mortgage servicers to protect borrowers from abusive practices. These prohibitions, detailed in 12 U.S.C. §§ 2605(k) and 2605(l) and 12 C.F.R. § 1024.37, outline servicers' obligations to act in the best interests of borrowers, including restrictions on certain actions that could harm the borrower's financial situation or jeopardize their homeownership.

107.    Under 12 U.S.C. § 2605(k)(1)(C), servicers are required to respond accurately and promptly to borrower inquiries regarding the servicing of their loan. This includes the obligation to provide correct information about the loan balance, payment history, and any fees or charges assessed.

108.    A servicer cannot establish a "reasonable basis" for obtaining force-placed insurance unless it meets all requirements of 12 U.S.C. § 2605(l), which include: (i) written notice to the borrower containing specific information regarding the obligation to maintain hazard insurance on the property; (ii) a second written notice meeting the same requirements sent at least 30 days later; and (iii) no evidence of hazard insurance coverage by the borrower within 15 days of the mailing of the second notice.

109.    Section 1024.38 of Regulation X details the "general servicing policies, procedures, and requirements" for mortgage loan servicers, and mandates that "[a] servicer shall maintain policies and procedures that are reasonably designed to achieve the objectives set forth in paragraph (b) of this section." 12 C.F.R. § 1024.38(a).

110. The objectives servicers are expected to achieve include (i) "[a]ccessing and providing timely and accurate information," (ii) "[p]roperly evaluating loss mitigation applications," (iii) "[f]acilitating oversight of, and compliance by, service providers," and (iv) "[f]acilitating transfer of information during service transfers." 12 C.F.R. § 1024.38(b).

111. Servicers are also required to adhere to certain standard requirements for record retention and servicing files. 12 C.F.R. § 1024.38(c):

> A servicer shall maintain the following documents and data on each mortgage loan account serviced by the servicer in a manner that facilitates compiling such documents and data into a servicing file within five days:
>
> (i)   A schedule of all transactions credited or debited to the mortgage loan account, including any escrow account as defined in § 1024.17(b) and any suspense account;
> (ii)  A copy of the security instrument that establishes the lien securing the mortgage loan;
> (iii) Any notes created by servicer personnel reflecting communications with the borrower about the mortgage loan account;
> (iv)  To the extent applicable, a report of the data fields relating to the borrower's mortgage loan account created by the servicer's electronic systems in connection with servicing practices; and
> (v)   Copies of any information or documents provided by the borrower to the servicer in accordance with the procedures set forth in § 1024.35 or § 1024.41.

112. Based on the documents received in response to the QWR, SPS has failed to comply with the servicing requirements and objectives of Section 1024.38 by failing to:

> a. Provide accurate and timely disclosures to Plaintiff;
> b. Provide Plaintiff with accurate and timely information and documents in response to his QWR;
> c. "[I]dentify necessary documents or information that may not have been transferred by a transferor servicer and obtain such documents from the transferor servicer";
> d. Retain records documenting actions taken with respect to Plaintiff's mortgage loan account; and
> e. Maintain a servicing file containing all required documents and data related to Plaintiff's loan.

*See* 12 C.F.R. §§ 1024.38(b), (c).

113.    Upon information and belief, SPS has similarly failed to comply with the servicing requirements and objectives of Section 1024.38, including failing to "timely transfer all information and documents in the possession or control of the servicer relating to a transferred mortgage loan to a transferee servicer in a form and manner that ensures the accuracy of the information and documents transferred." *See* 12 C.F.R. § 1024.38(b)(4)(i).

114.    Upon information and belief, SPS imposed a force-placed hazard insurance disbursement for $29,356.00 on Plaintiff's account, without meeting the foregoing requirements. *See* Add. A.

115.    As a result of SPS' failure to comply with the requirements of Section 1024.38 of Regulation X, Plaintiff is entitled to recover actual damages pursuant to 12 U.S.C. § 2605(f)(1), along with any attorneys' fees and costs incurred, pursuant to 12 U.S.C. § 2605(f)(3).

116.    Because SPS has also demonstrated a pattern and practice of noncompliance with RESPA's statutory requirements and implementing regulations, for each such violation, Plaintiff is entitled to additional damages pursuant to 12 U.S.C. § 2605(f)(1)(B).

## VIOLATIONS OF TILA AND REGULATION Z
### (15 U.S.C. § 1601, *et seq.* and 12 C.F.R. § 1026.1, *et seq.*)

117.    Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

118.    Plaintiff is a "consumer" as defined by TILA. *See* 15 U.S.C. § 1602(i).

119.    SPS is a "creditor" as defined by TILA. *See* 15 U.S.C. § 1602(g). Additionally, as purchaser and/or assignee of Plaintiff's loan, SPS is subject to the claims and defenses herein pursuant to 15 U.S.C. §§ 1641(d)(1) and 1641(e).

120.    Plaintiff's Mortgage loan is a "residential mortgage loan" as defined by TILA. *See* 15 U.S.C. § 1602(dd)(5).

121.    Upon information and belief, the Mortgage is a "high-cost mortgage" as defined by TILA. *See* 15 U.S.C. §1602(aa).

122.    The Modification, which increased the unpaid principal balance to $663,554.70, qualifies as a new obligation and new transaction requiring new consumer disclosures under TILA-Part B and Regulation Z. *See* 12 C.F.R. §1026.20 (a).

123.    Upon information and belief, when Plaintiff executed the Modification, he was not provided with new disclosures as required under TILA – Part B and Regulation Z.

124.    Further, Regulation Z prohibits dual compensation payments in connection with a loan transaction. *See* 12 C.F.R. § 1026.36(d)(2)(i).

125.    As detailed herein, Plaintiff's loan account was repetitively charged duplicative fees, including for items and services that were already paid by and/or charged to other persons, such as the property inspections.

126.    Accordingly, Plaintiff is entitled to recover actual and statutory damages, along with any attorneys' fees and costs incurred, pursuant to 15 U.S.C. § 1640.

**COUNT IV**
**Failure to Adhere to Required Servicing Practices**
**(15 U.S.C. § 1639f, *et seq*. and 12 C.F.R. § 1026.36)**

127.    Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

128.    Regulation Z details certain servicing practices a servicer must follow in connection with payment processing and application of payments. *See* 12 C.F.R. § 1026.36(c)(1).

129.    TILA also prescribes similar requirements for the "prompt crediting of home loan payments." *See* 15 U.S.C. § 1639f.

130.    Specifically, Regulation Z provides:

> No servicer shall fail to credit a periodic payment to the consumer's loan account as of the date of receipt, except when a delay in crediting does not result in any charge to the consumer or in the reporting of negative information to a consumer reporting agency, or except as provided in paragraph (c)(1)(iii) of this section. A periodic payment, as used in this paragraph (c), is an amount sufficient to cover principal, interest, and escrow (if applicable) for a given billing cycle. A payment qualifies as a periodic payment even if it does not include amounts required to cover late fees, other fees, or non-escrow payments a servicer has advanced on a consumer's behalf.

*See* 12 C.F.R. § 1026.36(c)(1)(i).

131.    If a servicer retains a partial payment in a suspense or unapplied funds account, the servicer must disclose to the borrower any amounts held in suspense and, "[o]n accumulation of sufficient funds to cover a periodic payment in any suspense or unapplied funds account, treat such funds as a periodic payment received in accordance with paragraph (c)(1)(i) of this section." *See* 12 C.F.R. § 1026.36(c)(1)(ii).

132.    Upon information and belief, SPS improperly retained funds in a suspense or unapplied funds account, which should have been applied in accordance with 12 C.F.R. §§ 1026.36(c)(1)(ii) and 1026.36(c)(1)(i).

133.    Upon further information and belief, SPS' failure to apply suspense funds in a timely manner resulted in increased interest and other fees charged to Plaintiff's account, in violation of TILA and Regulation Z.

134.    Accordingly, Plaintiff is entitled to recover actual and statutory damages, along with any attorneys' fees and costs, pursuant to 15 U.S.C. § 1640.

## <u>VIOLATIONS OF THE FDCPA AND REGULATION F</u><br>(15 U.S.C § 1692, *et seq.* and 12 C.F.R. § 1006.1, *et seq.*)

135.    Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

136.    The FDCPA, codified at 15 U.S.C. § 1692, *et seq.*, was enacted by Congress in 1977 to eliminate abusive debt collection practices, and to promote consistent state action to protect consumers against debt collection abuses.

137.    Regulation F, issued by the CFPB, implements the FDCPA, and is codified at 12 C.F.R. Part 1006. Regulation F clarifies and expands on the rules that govern debt collectors' practices under the FDCPA. It provides detailed guidance on how debt collectors must interact with consumers, ensuring transparency and fairness in the debt collection process.

138.    Plaintiff is a "consumer" as defined by the FDCPA and Regulation F. *See* 15 U.S.C. § 1692a(6) and 12 C.F.R. § 1006.2(e).

139.    SPS is a "debt collector" as defined by the FDCPA and Regulation F. *See* 15 U.S.C. § 1692a(3) and 12 C.F.R. § 1006.2(i).

### COUNT V
### Collection of Prohibited Fees
### (15 U.S.C § 1692f and 12 C.F.R. § 1006.22)

140.    Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

141.    The FDCPA prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect a debt." 15 U.S.C. § 1692f.

142.    Prohibited debt collection conduct under the FDCPA includes "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).

143.    Likewise, Regulation F prohibits the collection of any "interest, fee, charge, or expense incidental to the principal obligation," which is not also "expressly authorized by the agreement creating the debt or permitted by law." *See* 12 C.F.R. § 1006.22(b).

144.    Upon information and belief, from origination to present, Plaintiff's account was charged additional fees incidental to the principal loan obligation, which were also not expressly authorized by the applicable agreement(s) evidencing Plaintiff's loan debt.

145.    Accordingly, SPS' collection of, or attempt to collect, any such fees is expressly prohibited by the FDCPA, and constitutes "unfair or unconscionable means to collect or attempt to collect a[] debt." *See* 15 U.S.C. § 1692f; *see also* 12 C.F.R. § 1006.22(b).

146.    Upon information and belief, SPS has improperly sought to collect an artificially inflated debt from Plaintiff, resulting from unauthorized and illegal fees, interest, and other charges added to Plaintiff's loan account.

147.    Upon further information and belief, SPS has sent Plaintiff statements and other documents containing debt collection language and misrepresentations regarding the status of the account and amounts owed, including the illegal fees, interest, and other charges added to Plaintiff's account.

148.    As a result of SPS' violations of 15 U.S.C. § 1692f(1) and 12 C.F.R. § 1006.22(b), Plaintiff is entitled to actual and statutory damages, and recovery of attorneys' fees and costs, pursuant to 15 U.S.C. § 1692k.

## COUNT VI
### Use of False, Deceptive, or Misleading Representations
### (15 U.S.C. § 1692e)

149.    Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

150.    The FDCPA prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e.

151.    Examples of prohibited false or misleading representations include falsely representing the "character, amount, or legal status of any debt," and "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt." *See* 15 U.S.C. §§ 1692e(2)(A) and 1692e (10).

152.    SPS' attempts to collect fees prohibited by 15 U.S.C. § 1692f(1), and falsely representing those fees as being included in the debt amount owed by Plaintiff, are violations of 15 U.S.C. § 1692e.

153.    Further, SPS' actions and failure to correct errors in Plaintiff's account have resulted in the addition of improper and illegal fees, interest, and other charges to Plaintiff's account, thereby falsely inflating Plaintiff's alleged loan balance and amounts owed, in further violation of 15 U.S.C. § 1692e.

154.    Upon information and belief, SPS has improperly sought to collect an artificially inflated debt from Plaintiff, resulting from illegal fees, interest, and other charges added to Plaintiff's loan account.

155.    Upon further information and belief, SPS has sent Plaintiff statements and other documents containing debt collection language and misrepresentations regarding the status of the account and amounts owed, including the illegal fees, interest, and other charges added to Plaintiff's account.

156.    As a result of the foregoing violations, Plaintiff is entitled to actual and statutory damages, and recovery of attorneys' fees and costs, pursuant to 15 U.S.C. § 1692k.

## VIOLATIONS OF N.Y. BANKING LAW

157.    Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

27

158.    Section 6-i of the Banking Law requires any entity making a mortgage loan to conform with the requirements of Article 12-D of the Banking Law and comply with "such rules and regulations as may be promulgated by the superintendent of financial services" (the "Superintendent's Regulations").

159.    Article 12-D of the Banking Law grants the Superintendent authority to regulate the activities of mortgage loan bankers, servicers, and related entities, including promulgating rules, regulations, and policies to effectuate the purposes of the Banking Law. *See* N.Y. Banking Law §§ 595-a, 595-b, and 595-c.

## COUNT VII
### Escrow Accounts and Statements
### (N.Y. Banking Law § 6-k and 3 N.Y.C.R.R. § 419.4)

160.    Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

161.    Section 6-k of the Banking Law prescribes requirements for "mortgage investing institutions" maintaining a mortgage escrow account on New York real property.

162.    A "mortgage investing institution" is defined as "any bank, trust company, national bank, savings bank, savings and loan association, federal savings bank, federal savings and loan association, private banker, credit union, federal credit union, investment company, pension fund, licensed mortgage banker or any other entity which maintains a real property insurance escrow account for real property located in this state." *See* N.Y. Banking Law § 6-k(1)(a).

163.    SPS is a "mortgage investing institution" pursuant to Section 6-k.

164.    The requirements of Section 6-k include, among others: (i) making timely payments of insurance premiums; (ii) providing an annual escrow account analysis to the borrower; and (iii) providing written disclosures to the borrower upon establishing an escrow account. See N.Y. Banking Law § 6-k(2). The Superintendent's Regulations also require servicers to provide

28

borrowers with annual escrow statements meeting the requirements of RESPA and 12 C.F.R. §§ 1024.17(i)(1) and (j). *See* 3 N.Y.C.R.R. § 419.4(a).

165.    "If any such payments are not timely, the mortgage investing institution is responsible for making such payments including any penalties and interest and shall be liable for all damages to the mortgagor resulting from its failure to make timely payment." *See* N.Y. Banking Law § 6-k(2)(f)(i).

166.    When a mortgage investing institution fails to pay a property insurance premium as required, it shall be liable to the mortgagor, "upon failure to pay such real property insurance premiums, for the amount of the real property insurance premiums plus penalties and interest imposed thereon." *See* N.Y. Banking Law § 6-k(5)(a).

167.    "In addition to any other remedies permitted by law, . . . the court may award the mortgagor injunctive relief and liquidated damages in an amount equal to three times the real property insurance premium not paid, but in no event greater than six thousand dollars." *See* N.Y. Banking Law § 6-k(5)(b).

168.    "A mortgage investing institution shall be liable to the mortgagor for all damages and shall bear all responsibility for failure to make timely payment of insurance premiums." See N.Y. Banking Law § 6-k(5)(c).

169.    Upon information and belief, SPS failed to make timely payment of insurance premiums, and incurred penalties that it also charged to Plaintiff's account, in violation of N.Y. Banking Law. SPS further failed to provide Plaintiff with annual escrow account statements, in violation of the Banking Law and Superintendent's Regulations.

170.    Accordingly, Plaintiff is entitled to recover actual, statutory, and liquidated damages pursuant to Banking Law § 6-k.

## COUNT VIII
### High-Cost Home Loans
### (N.Y. Banking Law § 6-1)

171.    Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

172.    Section 6-l of the Banking Law, New York's anti-predatory lending law, outlines lender prohibitions and requirements related to "high-cost" home loans.

173.    Section 6-l defines a high-cost home loan as one in which the terms of the loan exceed one or more specific thresholds including annual percentage rate, and total points and fees.

174.    Upon information and belief, the Modification constituted a new loan transaction and obligation, the terms of which exceed the statutory thresholds of Section 6-l.  Accordingly, the Modification qualifies as a high-cost home loan subject to the requirements of Sections 6-l.

175.    Section 6-l also requires specific counseling disclosures to be provided to a borrower at the time of application and prior to closing.  *See* N.Y. Banking Law § 6-l(2)(l).

176.    Upon information and belief, Plaintiff was not provided with the required disclosures in connection with the Modification.

177.    Accordingly, Plaintiff is entitled to recover (i) actual damages pursuant to Section 6-l(7)(a), including consequential and incidental damages; (ii) statutory damages in accordance with Section 6-l(7)(b), including forfeiture all of the interest (earned or unearned), points and fees, and closing costs charged on the loan, and a refund of any amounts paid; and (iii) reasonable attorneys' fees, pursuant to Section 6-l(8).

## COUNT IX
### Accounting

178.    Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

179.    SPS provided incomplete and contradictory information regarding Plaintiff's loan account in response to the QWR.

180.    Section 419.4 of the Superintendent's Regulations require servicers to provide borrowers with (i) annual statements, (ii) payment histories, (iii) periodic statements, and (iv) payoff balances containing specific information and meeting certain requirements. *See* 3 N.Y.C.R.R. §§ 419.4(a)-(d).

181.    SPS' response to the QWR fails to provide all of the information required under Section 419.4. The documents SPS did provide reflect superfluous servicing errors, including improper and duplicative fees and charges added to Plaintiff's account.

182.    In order to accurately determine the sum and extent of these errors and improper charges to Plaintiff's account, SPS must provide a full accounting of all transactions and calculations involving the loan account including, but not limited to, all credits, debits, payments, disbursements, interest (including rates and changes), fees, charges, and balances.

183.    The accounting should include, for all time periods since its origination, (i) annual statements, (ii) payment histories, (iii) periodic statements, and (iv) payoff balances meeting the requirements of Section 419.4(a)-(d).

184.    The information necessary to conduct this accounting is solely within SPS' possession, custody, and control.

185.    Plaintiff has no adequate remedy at law, and no other means by which to obtain this information.

186.    Accordingly, Plaintiff seeks an accounting of the entire Mortgage loan history, from origination to present.

## DEMAND FOR JURY TRIAL

187.    Pursuant to Fed. R. Civ. P. 38, Plaintiff respectfully requests a trial by jury on all

issues so triable.

**WHEREFORE**, Plaintiff respectfully demands judgment awarding all actual, statutory,

and/or punitive damages, equitable relief, and other relief available pursuant to applicable law.

Dated: Brooklyn, New York
        February 4, 2025

> **PETROFF AMSHEN LLP**
> *Attorneys for Plaintiff,*
> Isaiah Owens
>
> */s/ Serge F. Petroff*
> Serge Petroff, Esq. (ID No. SP9522)
> 1795 Coney Island Avenue, Third Floor
> Brooklyn, New York 11230
> Telephone: (718) 336-4200
> Email: spetroff@petroffamshen.com

## SUMMARY OF EXHIBITS AND ADDENDA

**EXHIBITS:**

**Exhibit 1** – Note, dated May 22, 2006

**Exhibit 2** – Mortgage, dated May 22, 2006

**Exhibit 3** – Modification, dated April 1, 2018

**Exhibit 4** – AOM, dated March 5, 2010

**Exhibit 5** – QWR, dated May 7, 2024

**Exhibit 6** – QWR Acknowledgment Letter, dated May 14, 2024

**Exhibit 7** – QWR Response, dated May 14, 2024

**ADDENDA:**

**Addendum A** – Unexplained Lender Paid Expenses

**Addendum B** – Property Preservation Fees

**Addendum C** – Escrow Discrepancies

**Addendum D** – Attorneys' Fees