UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
                                                                  :
**ISAIAH OWENS**,                                                 :
                                                                  :
                                    Plaintiff,    :    **MEMORANDUM DECISION AND
                                                          ORDER**
                                                  :
                – against –                       :    25-CV-0622 (AMD) (ST)
                                                  :
                                                  :
**SELECT PORTFOLIO SERVICING, INC.**,             :
                                                  :
                                    Defendant.    :
                                                  :
------------------------------------------------------------------ X

**ANN M. DONNELLY**, United States District Judge:

The plaintiff claims that the defendant violated the Real Estate Settlement Procedures Act

("RESPA"), 12 U.S.C. 2605 *et seq.*, the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et*

*seq.*, and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*  He also

brings a claim for equitable accounting.  Before the Court is the defendant's motion to dismiss

the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  As explained below, the

motion is granted in part and denied in part.

## BACKGROUND[1]

### I.    Factual Background

On May 22, 2006, the plaintiff purchased the home at 14 Ocean Avenue, Valley Stream,

New York 11580, and executed a note for $352,000, secured by a mortgage on the property in

favor of WMC Mortgage Corporation.  (ECF No. 14 ¶¶ 10–11.)  J.P. Morgan Chase Bank,

---

[1] This section is based on the complaint and the loan documents that are "integral" to it.  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *see also Santhosh v. Wells Fargo Bank, N.A.*, No. 25-CV-1447, 2026 WL 1413883, at *1 (E.D.N.Y. May 20, 2026).

National Association serviced the loan until June 1, 2013, when it transferred servicing to the defendant. (*Id.* ¶ 12.)

On April 1, 2018, the parties agreed to a "Loan Modification" agreement. (ECF No. 14 ¶ 13; *see also* ECF No. 14-3 (agreement).) The plaintiff does not include any facts in the amended complaint about the events that led to the loan modification, but according to the initial complaint and a document attached to the amended complaint, the plaintiff became delinquent on his mortgage payments. (*See* ECF No. 1 ¶ 18 (alleging servicer violated obligation to make contact with delinquent borrower); ECF No. 14-7 at 95 (foreclosure services invoice).) The loan modification increased the principal balance from $352,000.00 to $663,554.70 (ECF No. 14 ¶ 14), and provided that the "modified principal balance of the Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs but excluding late charges, collectively 'Unpaid Amounts')." (ECF No. 14-3 ¶ 2(b).)

More than five years later, on May 7, 2024, the plaintiff sent the defendant a letter in which he asked for 30 categories of documentation regarding the loan account and history from origination to present, including an "itemized statement and explanation of all fees, costs, advances, charges, and other expenses," among other things. (ECF No. 14 ¶¶ 19–21; ECF No 14-5.) The defendant acknowledged receipt on May 14, 2024, and sent the plaintiff 159 pages of documents, including the plaintiff's transaction history, corporate advance history, fee itemizations, and escrow statements for certain years. (ECF No. 14 ¶¶ 23–24; *see also* ECF Nos. 16 (acknowledgement), 14-7 (defendant's response).) The defendant did not give the plaintiff everything he requested, and did not explain its incomplete responses in some areas, but said generally that the requests were "overbroad and unduly burdensome." (ECF No. 14 ¶ 25.) The

2

defendant included its customer service phone number, the hours it would be available, and its website address, where the plaintiff could get account information, "schedule payments," and "review loss mitigation status." (ECF No. 14-7 at 7.)

## II.    Procedural History

The plaintiff filed the complaint in this action on February 4, 2025. (ECF No. 1.) The Court held a pre-motion conference on the defendant's anticipated motion to dismiss on June 10, 2025. The next day, June 11, 2025, the plaintiff filed an amended complaint in which he brought three claims under RESPA, one under TILA, two under the FDCPA, and one common law demand for equitable accounting. (ECF No. 14.)[2] The RESPA claims include: "failure to adequately respond to borrower inquiries," 12 U.S.C. § 2605(e),(k) (Count I), "improper administration of escrow accounts," 12 U.S.C. § 2605(g) (Count II), and "violation of servicer prohibitions," 12 U.S.C. § 2605(k) (Count III). (ECF No. 14 ¶¶ 61–79.) The plaintiff also asserts a claim under TILA for "failure to comply with provide required disclosures" and "failure to adhere to required servicing practices" under 15 U.S.C. § 1601 (Count IV). (*Id.* ¶¶ 80–86.) The plaintiff's remaining statutory claims arise under the FDCPA, 15 U.S.C. §§ 1692e and 1692f, for "collection of prohibited fees" (Count V) and "use of false, deceptive, or misleading representations" (Count VI). (*Id.* ¶¶ 87–97.) The plaintiff also asserts a common law claim for equitable accounting (Count VII). (*Id.* ¶¶ 98–104). The plaintiff seeks actual and statutory damages, an order requiring the defendant to provide a full accounting of the plaintiff's loan account, attorneys' fees and costs, and pre- and post-judgment interest. (*Id.* at 33–34.)

---

[2] After the plaintiff filed the amended complaint, the defendant filed another request for a pre-motion conference, to which the plaintiff responded. (ECF Nos. 19, 22.) The Court waived the pre-motion conference requirement and set a briefing schedule. (*ECF Order dated Aug. 8, 2025.*)

**LEGAL STANDARD**

To survive a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim is plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Pleadings are construed in the light most favorable to the plaintiff. *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010). However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678.

A court deciding a Rule 12(b)(6) motion may examine "any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (citation omitted).

**DISCUSSION**

**I.    RESPA Claims**

      **a.    Count I: Inadequate Response to Qualified Written Requests and Correct Errors**

The plaintiff alleges that he sent the defendant a "qualified written request" ("QWR") as defined by RESPA, and that the defendant's response "failed to provide substantial and critical categories of requested information" in violation of the statute. (ECF No. 14 ¶ 26.) The defendant maintains that the plaintiff's claims are untimely, and that the May 7, 2024 letter is not a QWR. (*See* ECF No. 25-1 at 12–13.) In addition, the defendant argues that its response complied with the statute, and that the plaintiff has not alleged a violation. (*Id.* at 13–15.)

4

Finally, the defendant claims that the plaintiff has not pled actual or statutory damages.  (*Id.* at 20–22.)  The Court addresses these arguments in turn.

> i.       *Statute of Limitations*

A RESPA claim accrues on the date of the alleged violation, and for a violation of Section 2605, must be brought within three years of its occurrence.  12 U.S.C. § 2614.  Here, the plaintiff alleges that the defendant violated the statute when it did not respond adequately to the plaintiff's qualified written request, which the plaintiff sent on May 7, 2024.  (ECF No. 14-5.)  The defendant responded substantively on May 29, 2024.  (ECF No 14-7.)  That response — which the plaintiff claims violated RESPA's Section 2605(e) and (k) — is the basis of the allegations in Count I.  (ECF No. 14 ¶ 65.)  The plaintiff filed his lawsuit on February 4, 2025 (ECF No. 1), less than a year after he received the defendant's response, and well within the three-year statute of limitations.  Therefore, the plaintiff's RESPA claims under 12 U.S.C. § 2605 are not time-barred.

> ii.       *Qualified Written Request*

RESPA gives borrowers the right to request and receive information about their mortgage loan accounts.  *See* 12 C.F.R. § 1024.36.[3]  It also permits borrowers to notify their loan servicers of perceived errors in their accounts, and to have the servicer correct the error or explain why there is no error.  *See* 12 C.F.R. § 1024.35.  RESPA defines a QWR as follows:

> For purposes of this subsection, a qualified written request shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that—
>
> (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and

---

[3] RESPA's implementing regulations are collectively called "Regulation X."  78 Fed. Reg. 10696 (Feb. 14, 2013).

> (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B); *see also Roth v. CitiMortgage Inc.*, 756 F.3d 178, 181 (2d Cir. 2014) (defining qualified written requests). In addition, RESPA includes requirements mortgage loan servicers must meet in responding to QWRs.

In his May 7, 2024 letter, the plaintiff asked the defendant to "[p]lease treat this letter as a [QWR]." (ECF No. 14-5.) He asked for information about his loan, including the servicing of it. (*Id.*) For example, the plaintiff requested "a complete and itemized statement" of the "payment history from the inception of the loan to the date of this letter" (Request 12) and of "all advances or charges against the loan" (Request 13). (ECF No. 14-5 at 3.) The letter included the plaintiff's name, property address, and loan number. (*Id.* at 2.) These requests gave the defendant "sufficient detail," 12 U.S.C. § 2605(e)(1)(B), about the information that the plaintiff sought. Accordingly, the plaintiff's May 7, 2024 letter was a QWR.

However, the QWR did not, as the plaintiff claims, notify the defendant of errors or require it to correct errors, including with respect to the "unexplained capitalization of over $311,000." (ECF No. 27 at 12.) "A court need not accept the allegations in a complaint as true if they are 'contradicted by . . . documentary evidence . . . from the exhibits attached' to the complaint." *Yu Mei Chen v. Nielsen*, 363 F. Supp. 3d 333, 340 (E.D.N.Y. 2019) (quoting *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (alterations in original)); *In re Griffin*, No. 10-22431, 2010 WL 3928610, at *4–6 (Bankr. S.D.N.Y. Aug. 31, 2010) ("Some error or potential error must be identified in the QWR . . . ."). The plaintiff sought information and documents only about his loan. (*See* ECF No. ECF No. 14-5.) *See Jackson v. Caliber Home*

6

*Loans*, No. 18-CV-4282, 2019 WL 3426240, at \*6 (E.D.N.Y. July 30, 2019) (differentiating between requests for information and notices of error).

In short, the plaintiff's QWR was a request for information only, and the Court evaluates his allegations under 12 U.S.C. § 2605(e)(2)(C).

### iii.    *Alleged Violation of Obligations to Respond to QWR*

The defendant also argues that the complaint does not allege a RESPA violation.  (ECF No. 25-1 at 15.)  As explained above, the complaint does not sufficiently allege the defendant failed to correct errors in his account.  The allegations are sufficient to make out a claim that the defendant's response to the QWR was incomplete.

Under RESPA a loan servicer must acknowledge receipt of a QWR within five business days, unless it takes the requested action during that period.  12 U.S.C. § 2605(e)(1)(A).  As relevant here, the servicer must do an investigation and give the borrower the requested information or explain why the information is not available or cannot be obtained.  12 U.S.C. § 2605(e)(2)(C).  The servicer must also give the borrower the name and telephone number of someone who can assist the borrower.  *See id.*  RESPA provides a private cause of action for any violation of these or other requirements in the statute.  12 U.S.C. § 2605(f).

The defendant complied with some aspects of the statute; it gave the plaintiff more than 100 pages of documents, and explained that it could not respond to all the plaintiff's requests because the "requests are overbroad and unduly burdensome," or the documents are "privileged or proprietary."  (ECF No. 14-7 at 6–7.)  Nevertheless, the defendant's response was incomplete.  For example, the plaintiff asked for "[a] copy of the escrow account analysis performed on the loan *from inception to the date of this letter*, and proof each escrow account analysis was sent to borrower," and "[a] copy of all escrow disbursements made by the servicer."  (ECF No. 14-5 at 2

(emphasis added).)  The defendant gave this response: "[i]n the inquiry, you requested information regarding the escrow account.  We have enclosed the Annual Escrow Account Disclosure Statements dated July 7, 2021, July 20, 2022, and July 25, 2023, and the Escrow Disbursement History."  (ECF No. 14-6 at 5.)  The defendant did not address the plaintiff's requests for escrow account information for any other years it serviced the loan — from 2013 to 2021.

RESPA requires more.  The servicer must "provide the borrower with a written explanation or clarification that includes . . . an explanation of why the information requested is unavailable or cannot be obtained by the servicer."  12 U.S.C. § 2605(e)(2)(C)(i).  It is true that servicers do not need to respond to overbroad requests, *see* 12 C.F.R. § 1024.36(f)(1)(iv), but at this stage of the litigation, it is at least plausible that the plaintiff's requests were not overbroad or unduly burdensome.  *See e.g., Alcantar v. Flagstar Bank, N.A.*, No. 2:23-CV-1609, 2024 WL 4368193, at *4 (E.D. Cal. Oct. 1, 2024) (allowing RESPA claim where plaintiff may be able to show that her requests were not actually overbroad).  Accordingly, the plaintiff has sufficiently alleged that the defendant violated its statutory obligation to respond adequately to a borrower's request for information.

   *iv.* *Damages*

A plaintiff bringing a claim under Section 2605 "must allege injury and resulting damages that are proximately caused by the loan servicer's failure to adhere to its obligations under § 2605."  *Urquizo v. Community Loan Servicing LLC*, No. 24-CV-909, 2025 WL 1093073, at *10 (E.D.N.Y. Apr. 11, 2025) (quoting *Manzolillo v. Nationstar Mortg., LLC*, No. 22-CV-3570, 2025 WL 411754, at *6 (E.D.N.Y. Feb. 6, 2025)).

The plaintiff has not adequately alleged that he suffered actual damages because of the defendant's alleged violation of Section 2605(e).  Out-of-pocket costs are recoverable only when they are a result of the servicer's incomplete or insufficient response.  In other words, claiming damages for conduct before violation will not suffice.  *Santhosh v. Wells Fargo Bank, N.A.*, No. 25-CV-1447, 2026 WL 1413883, at *5 (E.D.N.Y. May 20, 2026); *see also Evans v. Select Portfolio Servicing, Inc.*, No. 18-CV-5985, 2020 WL 5848619, at *13 (E.D.N.Y. Sept. 30, 2020) ("[C]osts incurred before the violation occurred, such as the expenses of preparing an initial request for information, cannot serve as the basis for actual damages." (citing *Tanasi v. CitiMortgage, Inc.*, 257 F. Supp. 3d 232, 271 (D. Conn. 2017))).

The plaintiff claims the following damages: (1) "excess principal paid/accrued due to unverified capitalized amounts;" (2) "excess interest paid/accrued on inflated principal;" and (3) "emotional distress" including "anxiety, frustration, helplessness from SPS's nontransparency regarding $311,554.70 capitalized sum, 7+ year information gap, 'overbroad' claim, and fear of collection/foreclosure on unverified debt."  (ECF No. 14 ¶ 54.)  But these allegations have nothing to do with the allegedly inadequate response to the QWR.  Rather, the claims are based on the allegedly inflated charges in connection with the loan modification.  *See Murray v. Newrez LLC*, No. 24-CV-6160, 2025 WL 1158090, at *8 (E.D.N.Y. Apr. 21, 2025) (holding that damages from improperly imposed fees, interest, and other charges were not proximately caused by the defendant's failure to respond to borrower inquiries).

It is true that if a borrower states accurately in a QWR that certain fees were unwarranted, and the servicer does not correct the error, damages from the improper charges would be readily ascertainable.  *See Murray*, 2025 WL 1158090, at *7.  As explained above, however, the plaintiff did not claim any error in the QWR; he only requested information.  (*See* ECF No. 14-5 at 2–4.)

Thus, the plaintiff "cannot maintain that [he] was damaged by [the defendant's] claimed failure to correct any specific error in [his] account." *Jackson*, 2019 WL 3426240, at *8.

Nor can the plaintiff "disentangle the distress" "that was occasioned by the loan modification in which [he] voluntarily entered from that which may have been occasioned by Defendant's failure to respond fully to . . . [his] request[] for information . . .  and for this reason [he] has not alleged actionable . . . damages." *Sutton v. CitiMortgage, Inc.*, 228 F. Supp. 3d 254, 275 (S.D.N.Y. 2017); *see also Roth v. CitiMortgage Inc.*, No. 12-CV-2446, 2013 WL 5205775, at *8 (E.D.N.Y. 2013) ("Even if plaintiff and her husband suffered emotional distress from the possible loss of their home, plaintiff has not alleged that this injury was proximately caused by defendant's failure to comply with RESPA, *i.e.*, the form and timing of its response to plaintiff's letters."), *aff'd on other grounds*, 756 F.3d 178 (2d Cir. 2014).  For this reason, the plaintiff has not sufficiently pled damages for emotional distress.

The plaintiff argues that in any event, he states a plausible claim for statutory damages. Under RESPA, plaintiffs may recover statutory damages of no more than $2,000 "in the case of a pattern or practice of noncompliance."  12 U.S.C. § 2605(f)(1)(B).  However, courts in this circuit have held that Section 2605 does not support a claim for statutory damages or fees absent actual damages.  *See, e.g.*, *Dolan v. Select Portfolio Servicing*, No. 03-CV-3285, 2016 WL 4099109, at *5 (E.D.N.Y. Aug. 2, 2016) (collecting cases); *Murray*, 2025 WL 1158090, at *8; *Urquizo*, 2025 WL 1093073, at *10.  Consequently, the plaintiff's claim for statutory damages under RESPA fails because he has not pled actual damages.

Accordingly, Count I is dismissed.

### b. Count II: Improper Administration of Escrow Accounts

Mortgage loan servicers that require borrowers to make payments "into an escrow account for the purpose of assuring payment of taxes, insurance premiums, and other charges with respect to the property" must make the tax, insurance, or other payments from the escrow account "in a timely manner."  12 U.S.C. § 2605(g).

To state a claim under § 2605(g), a plaintiff must allege that "(1) the borrower had a federally related mortgage loan; (2) the terms of the loan agreement require the borrower to make payments to an escrow account; (3) the borrower owed taxes or premiums that were to be paid out of the escrow accounts; (4) the servicer failed to make such payments in a timely manner . . . ; and (5) at the time the premium payment was due, the borrower was not more than 30 days delinquent in making mortgage payments."  *Baxa v. Seterus, Inc.*, No. 17-CV-5434, 2018 WL 3632361, at *2 (E.D. La. July 31, 2018).

The plaintiff has not satisfied this requirement.  He first alleges that the defendant violated its escrow account administration duties because it did not give the plaintiff escrow account statements from 2006 through 2013, before the defendant started servicing the loan. (ECF No. 14 ¶ 71(a).)  He also asserts that the statements the defendant did provide are "missing required information" and "contain inaccurate and contradictory information," in violation of the implementing regulation, 12 C.F.R. § 1024.17.  (*Id.* ¶ 71(b).)  Finally, the plaintiff alleges that the defendant "grossly mismanag[ed]" his escrow account by "failing to make timely payments of taxes and/or insurance (leading to penalties that may have been improperly charged to Plaintiff or capitalized), failing to conduct accurate annual analyses, and/or intentionally misrepresenting figures and calculations to manufacture ongoing escrow deficiencies and thereby illegally collect additional fees, interest, and other amounts from Plaintiff."  (*Id.* ¶ 71(c).)

11

The first two claims — that the defendant did not provide account statements for certain years and that the statements it did provide were incomplete or contradictory — are not violations of escrow account administration obligations under the statute. Rather, the plaintiff appears to challenge the incomplete disclosure of statements, not the defendant's administration of the escrow account itself. The third claim — that the defendant "grossly mismanage[d]" his escrow account (*Id.* ¶ 71(c)) — is conclusory. The plaintiff does not allege any facts to support this allegation, or describe what the defendant did to mismanage his account or when it did so. Nor does he claim that he had to pay a penalty because the defendant made a late payment. *See Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) ("While a complaint need not contain 'detailed factual allegations,' it requires 'more than an unadorned, the defendant-unlawfully-harmed-me accusation.'" (quoting *Iqbal*, 556 U.S. at 678)). The plaintiff's only support for this conclusory allegation is the "history of consumer complaints against SPS regarding escrow mismanagement." (ECF No. 14 ¶ 71(c).) But other consumers' complaints are no substitute for facts that support the plaintiff's own complaint. Speculation and "naked assertions devoid of further factual enhancement" are insufficient to state a claim. *Iqbal*, 556 U.S. at 678 (quotations and alterations omitted).

Moreover, the plaintiff asserts violations of 12 C.F.R. § 1024.17, which does not provide a private right of action. That regulation is authorized by 12 U.S.C. § 2609, which provides no private right of action either. *See Herman v. Mr. Cooper Grp. Inc.*, No. 22-CV-8952, 2023 WL 6960283, at *2.

Accordingly, Count II is dismissed.

###### c. Count III: Violation of Servicer Prohibitions and Failure to Maintain Proper Policies and Procedures

In Count III, the plaintiff alleges that the defendant violated 12 C.F.R. § 1024.38 by failing to "maintain policies and procedures that are reasonably designed to achieve the objectives" of 12 C.F.R. § 1024.38, including by failing to "(i) provide accurate and timely information," (ii) "identify and obtain necessary documents or information from the prior servicer," J.P. Morgan Chase Bank, and (iii) "retain and provide access to records documenting actions taken with respect to Plaintiff's mortgage loan account for the full history of the loan." (ECF No. 14 ¶ 77.)  The plaintiff also alleges that the defendant violated 12 U.S.C. § 2605(l)(1) by "imposing a force-placed hazard insurance disbursement of $29,356.00 on Plaintiff's account without meeting the specific notice requirements mandated by 12 U.S.C. § 2605(l)(1)(A)-(C)." (*Id.*)

###### i. Violation of 12 C.F.R. § 1024.38

"[D]istrict courts around the country have confirmed" that borrowers do not have a private right of action "to enforce the requirements set forth in § 1024.38." *Mohamed v. Nationstar Mortg., LLC*, No. 20-CV-216, 2024 WL 4132351, at *6 (E.D.N.Y. Sept. 10, 2024); *see also* 78 Fed. Reg. at 10817–18 ("[B]orrowers do not . . . have a private right of action under the [Consumer Financial Protection Bureau's] rules to enforce the requirements set forth in § 1024.38 . . . ."); *Ramirez v. Wells Fargo Bank, N.A.*, No. 19-CV-5074, 2021 WL 9564023, at *6 (E.D.N.Y. Mar. 24, 2021).  To the extent Count III is premised on a violation of 12 C.F.R. § 1024.38, it must be dismissed.

###### ii. Violation of 12 U.S.C. §2605(l)(1)

The plaintiff also alleges that the defendant took out a "force-placed hazard" insurance policy and charged the plaintiff $29,356.00 for the policy, without satisfying the notice

13

requirements of 12 U.S.C. § 2605(l)(1).  (ECF No. 14 ¶ 77(a)(iii).)  That claim is barred by the statute of limitations.

The plaintiff does not allege when the defendant charged him for the policy, nor does he include the charge in his list of allegedly problematic fees and charges.  (*See* ECF Nos. 14-8, 14-9.)  The documents the plaintiff attached to his complaint show that hazard insurance charges were included on escrow account statements as early as September 2020.  (*See* ECF No. 14-7 at 102.)  And all but one of the charges in the plaintiff's addenda — one line item for $2,960.69 on May 17, 2023 — was incurred more than three years before the plaintiff filed suit.  (*See* ECF Nos. 14-8; 14-9.)  Under these circumstances, this claim is time-barred.

Neither the equitable tolling doctrine nor the continuing violation doctrine justifies tolling the statute of limitations here.  When a "defendant fraudulently conceals the wrong, the [statute of limitations] does not begin running until the plaintiff discovers, or by the exercise of reasonable diligence should have discovered, the cause of action."  *Ying Li v. City of New York*, 246 F. Supp. 3d 578, 602 (E.D.N.Y. 2017) (quoting *Pinaud v. Cnty. of Suffolk*, 52 F.3d 1139, 1157 (2d Cir. 1995)) (alteration in original).  A plaintiff "seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way."  *Phillips v. Generations Fam. Health Ctr.*, 657 F. App'x 56, 58 (2d Cir. 2016) (quoting *A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135, 144 (2d Cir. 2011)).  A plaintiff can establish extraordinary circumstances by showing "that it would have been *impossible* for a reasonably prudent person to learn about his or her cause of action."  *Conklin v. Jeffrey A. Maidenbaum, Esq.*, No. 12-CV-3606, 2013 WL 4083279, at *5 (S.D.N.Y. Aug. 13, 2013) (quoting *Pearl v. City of Long Beach,* 296 F.3d 76, 85 (2d Cir. 2004)) (emphasis in original).  Even then, the statute of limitations is tolled "only until such time

14

as a reasonable party relying on it actually knew, or should have known, of the unlawful conduct of the opposing party." *Coveal v. Consumer Home Mortg., Inc.*, No. 04-CV-4755, 2005 WL 704835, at *4 (E.D.N.Y. Mar. 29, 2005); *see also Blum v. Heller*, No. 24-CV-3130, 2025 WL 2470327, at *13 (E.D.N.Y. Aug. 6, 2025).

Nothing in the complaint suggests that the plaintiff did anything before 2024 — when he sent the QWR — to investigate the insurance or fees after the defendant took out the policy. The plaintiff also claims that the defendant affirmatively concealed the fees, which hampered him from pursuing a timely claim, but this claim is conclusory. Thus, the plaintiff has not established that equitable tolling should apply. *See Coveal v. Consumer Home Mortg., Inc.*, No. 04-CV-4755, 2005 WL 704835, at *4 (E.D.N.Y. Mar. 29, 2005) ("Th[e] due diligence requirement prevents a party from intentionally burying his or her head in the sand.").

Nor has he established that the continuing violation doctrine should apply. That doctrine, an exception to the normal rule that a claim accrues when the violation occurs, applies to claims that are "composed of a series of separate acts that collectively constitute one unlawful . . . practice." *Olivieri v. Stifel, Nicolaus & Co., Inc.*, 112 F.4th 74, 88 (2d Cir. 2024) (quoting *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002)) (other citations and quotations omitted). "[T]he continuing violation doctrine is heavily disfavored in the Second Circuit and courts have been loath to apply it absent a showing of compelling circumstances." *Hernandez v. Coca Cola Refreshments USA, Inc.*, No. 12-CV-234, 2013 WL 6388654, at *5 (E.D.N.Y. Dec. 6, 2013) (quoting *Trinidad v. New York City Dep't of Corr.*, No. 04-CV-3261, 2006 WL 704163 at *9, n. 11 (S.D.N.Y. Mar. 21, 2006)). The doctrine is typically asserted in hostile work environment claims. *See id.* The few courts in the Second Circuit that have addressed the continuing violation doctrine in the RESPA context have found that it does not

apply. *See Speer v. Select Portfolio Servicing*, No. 23-CV-192, 2023 WL 4850556, at \*7 (D. Conn. July 28, 2023) (noting that the plaintiff did not explain how her allegations, if true, constituted a continuing practice or policy of violating her rights under RESPA); *Papapietro v. Litton Loan Servicing, LP*, No. 13-CV-2433, 2020 WL 13179529, at \*7 (E.D.N.Y. Mar. 31, 2020) ("Plaintiff has failed to establish any continuing policy or practice violative of RESPA."). Courts in this circuit have determined that it does not apply to analogous statutes — TILA and the FDCPA. *See Craig v. Saxon Mortg. Services, Inc.*, at No. 13-CV-4526, 2015 WL 171234, at \*9 (E.D.N.Y. Jan. 13, 2015) (collecting TILA and FDCPA cases).

The doctrine would not apply to these claims in any event, because the plaintiff alleges only one violation — that the defendant took out the policy without notifying him. The plaintiff cannot avoid this result by grouping the notice violation claim with the 12 C.F.R. § 1024.38 violation claim. (*See* ECF No. 14 ¶ 77.) Unlike hostile work environment claims, where the "very nature" of the violation "involves repeated conduct," *Morgan*, 536 U.S. at 115, failure to notify is a single unlawful act, premised on a different statute than the alleged regulatory violations, which themselves create no right of action. They cannot be considered together. Accordingly, the continuing violation doctrine does not apply.

Because 12 C.F.R. § 1024.38 provides no private right of action, and the plaintiff's claim under 12 U.S.C. § 2605(1) is time-barred, Count III is dismissed.

## II.    TILA Claim (Count IV: Failure to Provide Required Disclosures and Adhere to Servicing Practices)

The plaintiff alleges that the defendant did not give him the disclosures required under TILA and its implementing regulations when he agreed to modify his mortgage loan on April 1, 2018. (ECF No. 14 ¶ 83.) The plaintiff also accuses the defendant of "improperly retaining funds paid by Plaintiff in a suspense or unapplied funds account and/or by failing to credit

periodic payments to Plaintiff's loan account as of the date of receipt, except where a delay would not result in any charge or negative reporting," in violation of 12 C.F.R. § 1026.36(c)(1). (ECF No. 14 ¶ 85.)  The defendant moves to dismiss this claim as time-barred.

An action under TILA must be brought "within one year from the date of the occurrence of the violation."  15 U.S.C. § 1640(e).  According to the complaint, the alleged violation occurred on or around April 1, 2018, the date of the modification pursuant to which such disclosures were allegedly required.  (ECF No. 14 ¶ 13.)  The plaintiff did not initiate this action until well after the statute of limitations had expired — more than five years after the modification.  (*See* ECF No. 1.)

"To survive a motion to dismiss an otherwise untimely TILA claim, the pleading must first allege, with specificity, 'efforts by the defendant, above and beyond the wrongdoing upon which the plaintiff's claim is founded, to prevent . . . the plaintiff from suing in time.'"  *Latouche v. Well[s] Fargo Home Mortg. Inc.*, No. 16-CV-1175, 2017 WL 8776975, at *7 (E.D.N.Y. Aug. 25, 2017) (quoting *McAnaney v. Astoria Fin. Corp.*, No. 04-CV-1101, 2007 WL 2702348, at *9 (E.D.N.Y. Sept. 12, 2007)).  The plaintiff has made no such allegations.  The complaint is similarly devoid of any assertions that the plaintiff was diligently pursuing his rights in the years since the modification.  "[A]n untimely TILA complaint 'wholly devoid of any allegations [of] diligence on [plaintiff's] part' is subject to dismissal."  *Latouche*, 2017 WL 8776975, at *7 (quoting *Arroyo v. PHH Mortg. Corp.*, No. 13-CV-2335, 2014 WL 2048384, at *12 (E.D.N.Y. May 19, 2014)).

As explained above, the Court declines to toll the statute of limitations on the plaintiff's TILA claim.  Accordingly, Count IV is dismissed.

17

### III.    FDCPA Claims

Counts V and VI allege FDCPA violations under 15 U.S.C. §§ 1692e and 1692f, respectively.  (ECF No. 14 ¶¶ 87–97.)  The FDCPA prohibits debt collectors from using any "unfair or unconscionable means" or "any false, deceptive, or misleading representation or means" to collect debt.  15 U.S.C. §§ 1692e, 1692f.  "The FDCPA is 'remedial in nature, [so] its terms must be construed in [a] liberal fashion if the underlying Congressional purpose is to be effectuated.'"  *Chandler v. NCB Mgmt. Servs., Inc.*, 528 F. Supp. 3d 92, 97 (E.D.N.Y. 2021) (quoting *Vincent v. The Money Store*, 736 F.3d 88, 98 (2d Cir. 2013)).

To state a claim under the FDCPA, a plaintiff must allege that (1) he is a "'consumer' who allegedly owes the debt or a person who has been the object of efforts to collect a consumer debt," (2) "the defendant collecting the debt [is] a 'debt collector,'" and (3) the defendant "engaged in an act or omission in violation of the FDCPA's requirements."  *Perez v. Experian*, No. 20-CV-9119, 2021 WL 4784280, at *12 (S.D.N.Y. Oct. 14, 2021) (quoting *Skvarla v. MRS BPO, LLC*, No. 21-CV-55, 2021 WL 2941118 at *2 (S.D.N.Y. July 12, 2021)); *see also Lewis v. Experian Info. Sols. Inc.*, No. 23-CV-857, 2024 WL 1308705, at *10 (E.D.N.Y. Mar. 27, 2024).  The Court assumes that the plaintiff is a "consumer" and the defendant is a "debt collector" within the meaning of the FDCPA.  (*See* ECF No. 14 ¶ 88.)  Thus, only the third element is at issue here.  For the reasons explained below, the FDCPA claim under 15 U.S.C. § 1692f may proceed to the extent it captures alleges unlawful conduct up to one year before the plaintiff filed suit.

### a.  Count V: Collection of Prohibited Fees

15 U.S.C. § 1692f lists "unfair or unconscionable" debt collection practices, including attempting to collect a debt amount not "expressly authorized by the agreement creating the debt

18

or permitted by law."  15 U.S.C. § 1692f(1).  The plaintiff alleges that the defendant collected or attempted to collect "unauthorized fees and charges" including "lender paid expenses," "property preservation fees," "escrow disbursements," and "attorney's fees," from loan origination to the present, "particularly in the amounts capitalized into the 2018 Loan Modification."  (ECF No. 14 ¶¶ 90–91.)  The defendant argues these categories of fees were authorized by the mortgage, which states that the plaintiff promised to pay "with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property."  (ECF No. 14-2 at 3.)  But whether the categories of fees alleged were incurred to "protect the value of the Property" or otherwise authorized involves questions of fact that the Court cannot resolve on a motion to dismiss.  *See DeSimone v. Select Portfolio Servicing, Inc.*, 786 F. Supp. 3d 509, 518 (E.D.N.Y. 2025).

      *i.   Statute of Limitations*

However, claims brought under the FDCPA have a one-year statute of limitations.  15 U.S.C. § 1692k(d).  Because "FDCPA causes of action accrue with each communication in violation of the Act," claims based on separate, discrete violations within the statute of limitations period can proceed — while those occurring outside of that period are barred.  *Evans v. Select Portfolio Servicing, Inc.*, No. 18-CV-5985, 2020 WL 5848619, at *7 (E.D.N.Y. Sept. 30, 2020) (quoting *Ehrich v. RJM Acquisitions LLC*, No. 09-CV-2696, 2009 WL 4545179, at *2 n.4 (E.D.N.Y. Dec. 4, 2009)); *see also Scott v. Greenberg*, No. 15-CV-05527, 2017 WL 1214441, at *5 (E.D.N.Y. Mar. 31, 2017).

As explained above, the equitable tolling doctrine does not apply to the claims in this case.  The plaintiff does not sufficiently allege that he pursued the FDCPA claims with reasonable diligence between April 2018 and May 2024.  Nor does the continuing violation

doctrine apply to the FDCPA claims.  *See Weaver v. Boriskin*, No. 16-CV-688, 2020 WL 13558738, at *3 (E.D.N.Y. Mar. 10, 2020) ("No court of appeals has held that debt-collection litigation (or a misleading statement made in connection with that litigation) is a continuing violation of the FDCPA." (quoting *Slorp v. Lerner, Sampson & Rothfuss*, 587 F. App'x 249, 257 (6th Cir. 2014))).  Each alleged violation — in this case each alleged instance of collecting unauthorized fees — is a discrete violation, and therefore the continuing violation doctrine is not applicable.

Accordingly, only FDCPA claims based on the alleged collection of unauthorized fees and charges up to one year before the plaintiff filed suit are permitted to proceed.

### b.      Count VI: Use of False, Deceptive, or Misleading Representations

To plead a violation of Section 1692e, a plaintiff must identify a false, deceptive, or misleading representation or means in connection with the collection of a debt.  *Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75, 84–85 (2d Cir. 2018).  The Second Circuit has held that "statements must be materially false or misleading to be actionable under the FDCPA." *Id.* at 84.

Courts determining whether a representation is false, misleading, or deceptive "use an objective standard measured by whether the alleged misrepresentation would mislead 'the least sophisticated consumer.'"  *Rojas v. Forster & Garbus LLP*, No. 13-CV-2825, 2014 WL 3810124, at *4 (E.D.N.Y. July 31, 2014) (citing *Greco v. Trauner, Cohen & Thomas, L.L.P.,* 412 F.3d 360, 363 (2d Cir. 2005)).  This is a question of law.  *See Corcia v. Asset Acceptance,* 2014 WL 3656049, at *4 (E.D.N.Y. July 22, 2014) (noting that the "Court can resolve whether a communication violates § 1692e on a motion to dismiss").  A plaintiff must show "more than a

sheer possibility that a defendant has acted unlawfully," and cannot rely on mere "labels and conclusions" to support a claim. *Ashcroft*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

The plaintiff has not met that standard. He alleges in the complaint that the defendant gave misleading and deceptive responses to the QWR because it falsely represented the "character, amount, or legal status" of the debt, *see* 15 U.S.C. 1692e(2)(A), but he does not plausibly allege how the defendant falsely represented the "character, amount, or legal status" (ECF No. 14 ¶ 95(a)). Providing non-itemized statements about the components of a capitalized sum, (*see* ECF No. 27 at 25), are not false representations. The defendant's statement that the plaintiff's requests were "overbroad and unduly burdensome" was not a factual misrepresentation; it is the defendant's opinion. *Bd. of Forensic Document Examiners, Inc. v. Am. Bar Ass'n*, 287 F. Supp. 3d 726, 738 (N.D. Ill. 2018) ("An opinion cannot be a misleading representation of fact."), *aff'd*, 922 F.3d 827 (7th Cir. 2019). Nor are mortgage statements false, deceptive, or misleading merely because they include fees that are "unexplained." (ECF No. 14 ¶ 95).

The plaintiff has not sufficiently alleged a violation of Section 1692e. Accordingly, Count VI is dismissed.

## IV.    Count VII: Demand for Equitable Accounting

To state a claim for equitable accounting under New York law, a plaintiff must show: "(1) a fiduciary relationship (2) entrustment of money or property (3) no other remedy and (4) a demand and refusal of an accounting." *Fuller Landau Advisory Servs. Inc. v. Gerber Fin. Inc.*, 333 F. Supp. 3d 307, 315 (S.D.N.Y. 2018); *see also Sulieman v. Igbara*, 599 F. Supp. 3d 113, 126 (E.D.N.Y. 2022). The plaintiff does not allege the existence of a fiduciary relationship, but argues that "special circumstances" warrant the equitable relief he seeks. (ECF No. 27 at 26.) He has not cited any case law to support his claim that special circumstances without a fiduciary

relationship warrant such relief.  In any event, the plaintiff does not describe any special

circumstances; he merely recites his RESPA violation allegations.  Accordingly, Count VII is

dismissed.

## CONCLUSION

For these reasons, the Court grants in part and denies in part the defendants' motion to dismiss. Counts I, II, III, IV, VI, and VII are dismissed. Count V may proceed.

As the defendant points out, at least four of the cases the plaintiff cites do not include the language that the plaintiff purports to quote, or provide support for the propositions he asserts. (ECF No. 28 at 7 n.2, 9 n.4, 14 n.10, 16 n.11.) Two of the citations are not to decisions at all. (*Id.* at 11 n.8). These citation issues suggest that the plaintiff is relying on artificial intelligence ("AI") to conduct legal research or draft legal filings, without confirming the accuracy of AI-generated material. Federal Rule of Civil Procedure 11(b) prohibits parties from making legal arguments that are not "warranted by existing law." Fed. R. Civ. P. 11(b). The use of fake or misleading citations violates this rule and wastes the opposing party's and the Court's time by requiring them to parse through the citations to determine which points of law, if any, are accurate. *See Perez v. Evans*, 24-CV-356, 2025 WL 2726792, at *4 (S.D.N.Y. Sept. 25, 2025) (determining that a plaintiff's use of "hallucinated" citations violated Rule 11). The plaintiff is warned that he must exercise caution in relying on AI software to draft court filings or to conduct legal research. The Court will impose sanctions for any further violations, including summary dismissal of his claims.

**SO ORDERED.**

s/Ann M. Donnelly

_____
ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
       June 4, 2026

23